MICHAEL BAILEY
United States Attorney
District of Arizona
RYAN J. ELLERSICK
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: ryan.ellersick3@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                   Plaintiff,<br>     vs.<br>Carlos Victor Passapera Pinott,<br><br>                  Defendant. | 20-mj-02951-MSA<br><br>RESPONSE TO MOTION FOR REVIEW OF DETENTION ORDER |

## INTRODUCTION

The defendant, a former agent of the United States Border Patrol, abused his position in law enforcement by secretly working for a drug cartel to smuggle large amounts of dangerous, illegal narcotics into the United States. On August 9, 2020, the defendant was caught delivering two duffel bags packed with over 50 pounds of hard drugs—including 350,000 fentanyl pills—and was arrested shortly thereafter. The Magistrate ordered the defendant detained as a flight risk, and the defendant now seeks review of that order. Given the defendant's flagrant abuse of trust, there are no conditions the Court can impose that will reasonably assure the defendant's appearance at future proceedings. The defendant's motion should be denied, and the Court should order the defendant detained pending trial.

## FACTUAL BACKGROUND

A. Facts in the Complaint

On August 9, 2020, at approximately 3:15 AM, the defendant left his residence in

Buckeye, Arizona, and drove the approximately 1.5 hours south to the Tucson Sector Ajo Border Patrol Station, where the defendant was employed at the time.[1] After stopping briefly at the Ajo Station, the defendant proceeded south toward the Lukeville Port of Entry, before driving to the remote desert area west of the port of entry. The defendant then proceeded back toward Phoenix, arriving at the Phoenix Sky Harbor International Airport at approximately 9:15 AM.

While in the airport parking lot, the defendant was observed unloading two large duffel bags from his white Ford Explorer and moving the bags into the vehicle of a co-conspirator. After a brief exchange, the co-conspirator departed the airport parking lot. A short time later, law enforcement agents stopped the co-conspirator's vehicle and seized the two duffel bags. A search of the bags revealed multiple packages containing powder substances that field tested positive for the properties of cocaine (21 kilograms), heroin (1 kilogram), and fentanyl (1 kilogram). In addition, the bags contained approximately 350,000 pills that field tested positive for the properties of fentanyl.

Later that day, law enforcement agents arrested the defendant while executing a search warrant on his residence. Within the residence, agents found approximately $329,000 in cash. A search of the white Ford Explorer the defendant used to transport the drugs contained an additional $40,000 in cash—believed to be the defendant's payment for delivering the two duffel bags earlier that day.

B. <u>Supplemental Factual Proffer</u>[2]

On August 10, 2020, the day after the defendant's arrest, law enforcement agents executed a search warrant on a safe deposit box leased by the defendant and his wife at Wells Fargo since January 2020. The safe deposit box contained an additional $311,000

---

[1] As noted below, the defendant resigned from the Border Patrol following his arrest in this case.

[2] This supplemental factual proffer was made by the government during the detention hearing before the Magistrate.

in cash.

A financial analysis revealed that between September 2019 and early April 2020, the defendant and his wife deposited approximately $125,000 in cash into their various bank accounts. They also made several large cash purchases during that time period, and the defendant's wife regularly deposited bundles of $20 bills at the bank. The defendant declared bankruptcy in 2015, and at that time reported a monthly income of approximately $5,000 ($8,000 gross).

In addition to the defendant's drug trafficking and money laundering activities, the investigation revealed that the defendant had defrauded the United States government by collecting salary payments for days he did not work. Surveillance of the defendant indicates he did not show up to work at the Ajo Station on at least five days in May 2020, and seven days in June 2020, even though he was scheduled to work and later certified time-and-attendance reports attesting that he worked those days. On numerous other dates between May and July 2020, the defendant arrived home (approximately 1.5 hours from the Ajo Station) before the end of his shift.

Finally, travel records indicate that the defendant and his wife traveled to Puerto Rico in November 2019, February 2020, June 2020, and July 2020.

C. Defendant's Pretrial Services Interview

The defendant made his initial appearance before the United States Magistrate on August 10, 2020, but Pretrial Services was unable to interview the defendant until August 12. According to the report of that interview submitted by Pretrial Services, the defendant was employed by the United States Border Patrol for 10 years, but resigned following his arrest. (Doc. 5, Pretrial Services Addendum, at 2). The report reflects that the defendant has four children, all adults. *Id.* The report also documents the defendant's strong ties to Puerto Rico, where he lived for many years as a youth and an adult, and where his parents and two siblings still reside. *Id.* In his interview with Pretrial Services, the defendant downplayed the frequency of his travel to Puerto Rico, noting he "travels to Puerto Rico yearly," *id.*, while travel records indicate the defendant traveled to Puerto Rico four times

within the last year.

With respect to his financial situation, the defendant gave a detailed accounting of his checking account balance, his monthly expenses, and the balance in his federal retirement plan. *Id.* Notably, the defendant did not mention to Pretrial Services the approximately $311,000 in cash hidden in his safe deposit box. *Id.*

D. Detention Hearing

On August 13, 2020, the defendant had his detention hearing before the Honorable D. Thomas Ferraro, United States Magistrate Judge. The government moved for detention, invoking the presumption under 18 U.S.C. § 3142(e) and arguing that, given the defendant's character and conduct, the only way to reasonably assure the defendant's appearance at future proceedings was to keep him in custody. The court struggled to identify a condition or combination of conditions that could reasonably assure the defendant's future court appearances, and observed that even an ankle monitor could not prevent the defendant from fleeing. The defendant was ultimately ordered detained. The court's written findings reflect that "[t]here is a serious risk that the defendant will not appear," and "[t]he defendant has not rebutted the presumption" that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required." (Doc. 7, Order of Detention).

**LEGAL ANALYSIS**

"If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C.A. § 3145(b). A district court's review of a magistrate's detention order is "de novo," meaning the district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).

A. <u>The Defendant Has Not Overcome the Presumption of Detention</u>

The Bail Reform Act establishes a rebuttable presumption in certain cases that no conditions of release can reasonably assure the defendant's appearance at future court proceedings. 18 U.S.C. § 3142(e)(3)(A) (stating that the presumption applies where there is probable cause to believe the defendant committed a Controlled Substances offense punishable by ten years or more in prison). The presumption imposes a burden of production on the defendant to offer some credible evidence contrary to the presumed fact—here, that the defendant is a risk of non-appearance. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *see also United States v. Lee*, 206 F. Supp. 3d 103, 108-109 (D.D.C. 2016) (observing that "[w]hile the burden of production may not be heavy, the applicable cases all speak in terms of a defendant's obligation to introduce 'evidence'").

The presumption of detention applies here based on the probable cause finding that the defendant committed a drug trafficking offense punishable by ten years or more in prison. And no facts proffered by the defendant overcome that presumption. The defendant argues, citing the Pretrial Services report, that the defendant's "length of time in the community, strong family ties, and prior service to the military and United States as [a] Border Patrol Agent for 10 years," overcome the presumption of detention. (Doc. 8, Mot. for Review of Detention Order, at 7). But none of those factors mitigate the substantial risk of the defendant's non-appearance. What appears to be the defendant's primary tie to the community—his employment with the Border Patrol[3]—has been severed as a result of his arrest in this case. Additionally, with no minor children, and multiple family members residing in Florida and Puerto Rico, the defendant's family ties in Arizona are similarly tenuous. Finally, the defendant's "service" to the United States can hardly be viewed as a factor weighing in favor of release. On the contrary, by using his "service" to the United States as a cover to smuggle drugs for the cartel, and by disregarding the oath he took as

---

[3] According to the Pretrial Services report, the defendant relocated to Arizona from Puerto Rico 10 years ago, at the same time he joined the Border Patrol. (Doc. 5, at 2).

member of federal law enforcement,[4] the defendant proved himself entirely untrustworthy.

Because the defendant has not offered any persuasive evidence to rebut the presumption of detention, he should be detained without further analysis.

B. The 3142(g) Factors Favor Detention

If the Court believes that the defendant has rebutted the presumption, application of the Section 3142(g) factors yields the same conclusion in favor of detention. That provision instructs the Court to take several statutorily prescribed factors into account "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(g). In addressing the Section 3142(g) factors, the Court should also continue to weigh the presumption's evidentiary finding militating against release. *Hir*, 517 F.3d at 1086 (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986) (observing that "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)'")).

*1. The Nature and Circumstances of the Offense (Section 3142(g)(1))*

The nature and circumstances of the offense weigh strongly in favor of detention. At bottom, the offense charged is not strictly about drug-trafficking; it is about corruption. The only reason the defendant was able to successfully transport large amounts of illegal narcotics for the drug cartel—and amass hundreds of thousands of dollars in illicit gains in the process—was because of his position with federal law enforcement.

This consideration is important because of the insights into a defendant's character and trustworthiness that flow from corrupt conduct. Corruption—and in particular corruption by federal law enforcement—always involves an abuse of trust. And when

---

[4] At the time of his appointment to the Border Patrol in 2010, the defendant took an oath to "support and defend the Constitution of the United States against all enemies, foreign and domestic."

- 6 -

evaluating whether a defendant will abide by certain conditions of release, the character and trustworthiness of the defendant are paramount. Just as a person who has a history of regularly failing to appear for court cannot generally be trusted to abide by conditions of release, a person who repeatedly abuses a position of trust in law enforcement should not be trusted to dutifully appear for court, particularly when facing a potential mandatory minimum sentence of 10 years in prison.

These general considerations apply with extra force here given the flagrancy of the defendant's abuse of trust in his position as a Border Patrol agent. Not only did the defendant fail to fulfill his important obligations to guard the international border, he affirmatively facilitated the drug cartel's transportation of large amounts of illegal narcotics across the border, all for his own personal gain and profit. Having betrayed the responsibilities entrusted to him in the strongest possible way, the defendant cannot be trusted to abide by any conditions of release the Court may impose.

Whatever reservoir of trust the defendant had when he took an oath to defendant the United States is now empty. Because the Court cannot have any confidence the defendant will abide by conditions of release, he should be detained.

### 2. *The weight of the evidence (3142(g)(2))*

The weight of the evidence, while the least important factor in the analysis, likewise weighs in favor of detention. According to the facts in the complaint, the defendant was observed delivering two duffel bags containing large amounts of illegal drugs to a co-conspirator. Subsequent search warrants revealed approximately $680,000 in cash in the defendant's possession. Following his arrest, the defendant resigned his position with the Border Patrol, and even acknowledges in his motion that the "money found in the home and car come from drug trafficking." (Doc. 8, at 5). The government submits that the evidence in the case is strong and weighs in favor of detention.

### 3. *The history and characteristics of the defendant (3142(g)(3))*

Section 3142(g)(3) instructs the Court to consider the defendant's "history and characteristics, including – the person's character, physical and mental condition, family

ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."

          i.   The defendant's character

As noted above, the defendant's character—as revealed by the nature of his corrupt conduct—provides no confidence he will abide by conditions of release. Two additional facts confirm the defendant's character for deception and lack of trustworthiness and bear emphasis here.

First, evidence gathered as part of the investigation revealed that the defendant routinely skipped work but collected full salary payments by falsifying time-and-attendance records. These facts, in combination with the defendant's corruption activities, paint a troubling picture of deception: not only was the defendant using his position as a Border Patrol agent to further the interests of the drug cartel, he was simultaneously falsifying official records and collecting salary payments for days he simply did not show up to work.

Second, the government has serious concerns about the defendant's lack of candor with Pretrial Services. While the defendant gave Pretrial Services a detailed accounting of his checking and retirement account balances, he made no mention of the $311,000 hidden in the safe deposit box leased by him and his wife. When Pretrial Services verified the defendant's financial information with his wife, she likewise did not disclose the large amount of cash in the safe deposit box. The natural inference from this deception is that the defendant intended to keep the $311,000 a secret—from the Court and the government—perhaps hoping to use those funds upon his release from custody. Regardless, the defendant's deceptive conduct toward an arm of the Court should be fatal to any argument for release.

          ii.   Family ties, employment, length of residence in the community, community ties

These factors likewise weigh in favor of detention. The defendant's family ties to

Arizona are tenuous. He has no minor children residing in Arizona, and his parents and two siblings reside in Puerto Rico, where the defendant and his wife appear to have spent a large portion of their lives before relocating to Arizona for the defendant's employment. That employment, as noted above, no longer exists. Further, because the defendant's residence in the community was tied to his employment with the Border Patrol, this factor likewise does not weigh in favor of release. In short, there is little reason for the defendant to remain in Arizona if he were released, regardless of any conditions the Court could impose.

### iii. Financial resources

At the time of his arrest, the defendant had approximately $680,000 in cash stored in various locations, including $40,000 the defendant received in connection with the single smuggling incident on August 9, 2020. Approximately $329,000 was found in a safe in the defendant's residence, and an additional $311,000 was hidden in a safe deposit box leased by the defendant and his wife, which was not disclosed to Pretrial Services. The defendant's ability to amass large amounts of cash and conceal those assets is clear.

Whether the defendant has additional liquid assets to aid in a potential flight from prosecution is unclear, as a review of the defendant's finances is ongoing. Substantial financial resources, however, are not needed in order to flee. Given his ties to Puerto Rico, the defendant and his wife could easily travel to the distant U.S. Territory and tap into financial support from family and friends. In any event, the defendant's ability to amass large amounts of cash suggests a degree of planning and sophistication, which, in combination with other factors, weighs in favor of detention.

### iv. Past conduct and criminal history

As noted in the Pretrial Services report, the defendant does not have a criminal record. But that does not mean August 9, 2020, was the first time the defendant did work for the cartel. The amount of seized cash itself suggests a lengthy history of illegal smuggling activities. Information available to the government indicates the defendant's smuggling exploits occurred over approximately the last year. For example, messages

from one of the defendant's burner phones seized during the search of his residence indicate the defendant was involved in alien smuggling as far back as June 2019.

The evidence indicates the defendant engaged in a pattern of corruption, using his position in law enforcement to further the goals of the cartel over a long period of time. This pattern of corrupt activity weighs strongly in favor of detention.

## CONCLUSION

A person who would repeatedly abuse his position of trust as a Border Patrol agent to smuggle drugs and aliens for the cartel, falsify records to defraud the U.S. government of salary payments for days he did not work, and conceal financial assets from Pretrial Services, would also cut off an ankle monitor and flee the jurisdiction to avoid a 10-year mandatory minimum prison sentence. The only way to reasonably assure the defendant's appearance at future proceedings is to keep him in custody. The Court should therefore order the defendant detained pending trial.

Respectfully submitted this 19th day of August, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Ryan J. Ellersick*

RYAN J. ELLERSICK
Assistant U.S. Attorney

Copy of the foregoing served electronically or by
other means this 19th day of August 2020, to:
Walter Goncalves, Esq.