FILED

2021 SEP 29  PM 3: 26

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
RYAN J. ELLERSICK
GORDON E. DAVENPORT III
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
Email: ryan.ellersick3@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR 20-01706-TUC-JGZ (MSA) |
|---|---|
| Plaintiff, | **S U P E R S E D I N G**<br>**I N D I C T M E N T** |
| | Violations: |
| vs. | 18 U.S.C. §§ 1343/1346<br>(Honest Services Fraud - Bribery)<br>Counts 1-3 |
| Carlos Victor Passapera Pinott, | 18 U.S.C. § 201(b)(2)<br>(Bribery)<br>Counts 4-5 |
| Defendant. | 21 U.S.C. § 846<br>(Conspiracy to Possess with Intent to<br>Distribute Cocaine, Fentanyl, and<br>Heroin)<br>Count 6 |
| | 21 U.S.C. §§ 841(a)(1) and<br>841(b)(1)(A)(ii)(II)<br>(Possession with Intent to Distribute<br>Cocaine)<br>Count 7 |
| | 21 U.S.C. §§ 841(a)(1) and<br>841(b)(1)(A)(vi)<br>(Possession with Intent to Distribute<br>Fentanyl)<br>Count 8 |
| | 21 U.S.C. §§ 841(a)(1) and<br>841(b)(1)(A)(i)<br>(Possession with Intent to Distribute<br>Heroin)<br>Count 9 |

18 U.S.C. § 924(c)(1)(A)
(Using/Carrying Firearm During and
in Relation to Drug Trafficking
Crime)
Count 10

8 U.S.C. §§ 1324(a)(1)(A)(v)(I),
1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i)
(Conspiracy to Transport Illegal
Aliens for Profit)
Count 11

8 U.S.C. § 1324(a)(2)(B)(ii) and 18
U.S.C. § 2
(Bringing in of Illegal Alien)
Count 12

18 U.S.C. § 1957
(Money Laundering)
Count 13

18 U.S.C. § 1957
(Money Laundering)
Count 14

18 U.S.C. §§ 981(a)(1)(C), 982(a)(1)
and 982(a)(6); 21 U.S.C. § 853; and
28 U.S.C. § 2461(c)
Forfeiture Allegation

**THE GRAND JURY CHARGES:**

<u>**COUNTS 1 - 3**</u>
**18 U.S.C. § 1343 & 1346**
**(Honest Services Fraud - Bribery)**

At all times material to this Superseding Indictment, unless otherwise stated:

**I. <u>Introductory Allegations</u>**

1.      Defendant CARLOS VICTOR PASSAPERA PINOTT was an agent of the U.S. Border Patrol assigned to the Ajo Border Patrol Station.

2.      The Ajo Border Patrol Station was located approximately 9 miles south of Ajo, Arizona, along State Route 85, and approximately 120 miles west of the Tucson Sector Border Patrol headquarters. The international border and the Lukeville Port of Entry were approximately 27 miles south of the station. The Ajo area of responsibility encompassed over 52 miles along the international border and nearly 8,800 square miles of operational area.

3.     Highway 2 was a highway in Sonora, Mexico that ran East and West along the international border between Sonoyta (south of Lukeville, Arizona) and San Luis (south of Yuma, Arizona).

4.     PASSAPERA was appointed as an agent for the U.S. Border Patrol on April 19, 2010. At that time, PASSAPERA took the following oath of office: "I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God."

5.     PASSAPERA's official U.S. Border Patrol credentials stated that PASSAPERA was "empowered to exercise the authority and perform the duties provided by law and Department of Homeland Security regulations, including making arrests, conducting investigations, conducting searches, making seizures, bearing firearms or serving any order, warrant or other process."

6.     Pursuant to Title 6, United States Code, Section 6(e)(3), the "U.S. Border Patrol [served] as the law enforcement office of U.S. Customs and Border Protection with primary responsibility for interdicting persons attempting to illegally enter or exit the United States or goods being illegally imported into or exported from the United States at a place other than a designated port of entry."

7.     As a sworn law enforcement agent for the U.S. Border Patrol, PASSAPERA owed a fiduciary duty to the U.S. Border Patrol and the citizens of the United States to perform the duties and responsibilities of his office free from corrupt influence.

8.     Omar Natalio Martinez Fontes, charged elsewhere, was an illegal alien residing in the United States who coordinated with PASSAPERA to smuggle various other illegal aliens into the United States and paid cash bribes to PASSAPERA.

9.     Luis Alfredo Quintero-Gonzalez (aka "Flaco"), charged elsewhere, was an illegal alien residing in the United States who coordinated with PASSAPERA to smuggle various other illegal aliens into the United States and paid cash bribes to PASSAPERA.

10.     Person A (aka "Jesus Flaco Hermano") was a brother of Quintero-Gonzalez who resided in the United States and who coordinated with PASSAPERA to smuggle various illegal aliens into the United States and paid cash bribes to PASSAPERA.

11.     Person B (aka "Francisco" or "Pancho") was an illegal alien residing in the United States who coordinated with PASSAPERA to smuggle various other illegal aliens into the United States and paid cash bribes to PASSAPERA.

12.     Person C (aka "Marcos") was an illegal alien residing in the United States who coordinated with PASSAPERA to smuggle various other illegal aliens into the United States and paid cash bribes to PASSAPERA.

13.     Person D (aka "Beto") was an illegal alien who was smuggled into the United States by PASSAPERA on two separate occasions.

14.     Person E (aka "Ivan") was an individual residing in Mexico who coordinated with PASSAPERA to import and deliver various controlled substances, including cocaine, fentanyl, and heroin, and directed the payment of cash bribes to PASSAPERA.

15.     Person F was an individual residing in the United States who received deliveries of controlled substances and paid cash bribes to PASSAPERA at Person E's direction.

## II.  The Bribery Scheme

16.     From a time unknown, but no later than in or around June 2019 through August 9, 2020, in the District of Arizona and elsewhere, the defendant, CARLOS VICTOR PASSAPERA PINOTT, devised and intended to devise a scheme and artifice to defraud and to deprive the U.S. Border Patrol and the citizens of the United States of their intangible right to the honest services of PASSAPERA, a U.S. Border Patrol agent, through bribery.

### A.     The Purpose of the Bribery Scheme

17.     The purpose of the bribery scheme was for PASSAPERA to unlawfully enrich himself by soliciting and accepting over a million dollars in cash bribes in exchange

1  for violating his official duties and abusing his appointed position as a U.S. Border Patrol

2  agent.

3      **B.**    **The Manner and Means of the Bribery Scheme**

4      18.    The manner and means by which PASSAPERA carried out the bribery

5  scheme included, but were not limited to, the following:

6      19.    PASSAPERA corruptly solicited and accepted large cash payments in return

7  for using his official position as a U.S. Border Patrol agent to smuggle controlled

8  substances and illegal aliens into the United States from areas along the international

9  border;

10      20.    PASSAPERA used burner cellular telephones to coordinate the importation

11  and transportation of controlled substances and illegal aliens, including exchanging

12  messages concerning the descriptions of the illegal aliens (names, height, weight, clothing),

13  and providing specific dates and locations for retrieving the controlled substances and

14  illegal aliens along the international border;

15      21.    After retrieving the controlled substances and illegal aliens from remote

16  areas of the desert along the international border, PASSAPERA surreptitiously transported

17  the drugs and aliens through U.S. Border Patrol checkpoints near Ajo, Arizona;

18      22.    PASSAPERA used his status as an active Border Patrol agent to conceal his

19  smuggling activities from his Border Patrol colleagues, other law enforcement authorities,

20  and the public by (1) wearing his Border Patrol uniform and using a marked Border Patrol

21  vehicle when retrieving controlled substances and illegal aliens from remote areas of the

22  Arizona desert along the international border, and (2) wearing his Border Patrol uniform

23  and insignia when transporting the controlled substances and illegal aliens through the

24  Border Patrol checkpoint in his personal vehicle.

25      23.    PASSAPERA carried his service firearm issued by the U.S. Border Patrol to

26  facilitate the smuggling activity in several ways, including, (1) to embolden and provide

27  personal protection for himself when retrieving and transporting the illegal aliens and

28

controlled substances from remote areas of the desert, and (2) to blend in as a normal on-duty Border Patrol agent and provide cover for his smuggling activities.

24.     PASSAPERA used a burner cellular telephone to coordinate his collection of cash payments from individuals involved in the bribery scheme. PASSAPERA and his associates used code words to refer to the cash bribes, including calling the bribes "tickets," "the deposit," and "papers."

25.     PASSAPERA concealed and stored hundreds of thousands of dollars in cash bribes in a safe in his personal residence and a safe-deposit box he maintained with a commercial financial institution.

26.     PASSAPERA laundered the proceeds of the bribery scheme through various cash purchases, including a luxury vehicle, jewelry, and real estate.

**C.     Acts in Furtherance of the Bribery Scheme**

27.     The acts engaged in and caused by PASSAPERA in furtherance of the bribery scheme included, but were not limited to, the following:

Bribes Related to Smuggling of Illegal aliens

28.     On or about June 23, 2019, PASSAPERA exchanged messages with Martinez Fontes about plans for smuggling individuals into the United States.

29.     On or about June 26, 2019, PASSAPERA messaged Martinez Fontes photographs of a location near the international border where PASSAPERA would pick up the individuals. PASSAPERA also messaged Martinez Fontes a kilometer-marker identifying the location as "Km23."

30.     On or about June 27, 2019, PASSAPERA and Martinez Fontes exchanged messages to coordinate payment to PASSAPERA.

31.     On or about July 8, 2019, PASSAPERA and Martinez Fontes exchanged messages about smuggling an individual, and PASSAPERA advised that they had "passed the checkpoint."

32.     On or about August 6, 2019, Martinez Fontes messaged PASSAPERA that an individual would be arriving at the usual location in five minutes, and described the

individual as wearing a long-sleeve grey shirt, no hat, and named "Jose." PASSAPERA replied, "Ok."

33.     On or about August 8, 2019, Martinez Fontes messaged PASSAPERA that an individual was hiding and ready. PASSAPERA replied, "Ok." Martinez Fontes added that the individual would get in to PASSAPERA's vehicle when PASSAPERA said so.

34.     On or about August 14, 2019, Martinez Fontes messaged PASSAPERA that the "muchacho was 5' 5'" and "weighed 190" and the "woman was 5' 5''" and "weighed 170 lbs" and said he hoped PASSAPERA could do it.

35.     On or about August 21, 2019, Martinez Fontes messaged PASSAPERA that an individual named "Hector" was on his way to Sonoyta and would be ready at 9:30 AM the following morning. PASSAPERA replied "Ok, tomorrow around 10 or 11."

36.     On or about August 29, 2019, Martinez Fontes messaged PASSAPERA that they would have "2 people" for the following week. PASSAPERA replied, "Ok."

37.     On or about August 29, 2019, PASSAPERA messaged Quintero-Gonzalez asking about Quintero-Gonzalez's relatives who wanted to cross. Quintero-Gonzalez confirmed that he had some relatives ready. Later that day, Quintero-Gonzalez confirmed that the "muchacho" was ready and the "deposit" was also ready.

38.     On or about August 30, 2019, Quintero-Gonzalez messaged PASSAPERA that he had "another muchacho" that was ready. PASSAPERA replied that he would call Quintero-Gonzalez.

39.     On or about September 2, 2019, Quintero-Gonzalez messaged PASSAPERA that the "muchacho" was ready and his name was "Rey."

40.     On or about September 11, 2019, PASSAPERA messaged Martinez Fontes that he would be unavailable from September 23, 2019, through the middle of October because he would be at a "training."

41.     On or about September 11, 2019, PASSAPERA messaged Quintero-Gonzalez saying he would be unavailable from September 23, 2019, through the middle of

1    October. Quintero-Gonzalez replied that he would hurry with the two "muchachos" he had
2    ready.

3         42.    On or about September 16, 2019, Person B messaged PASSAPERA saying
4    he had "tickets" for two or three people and wanted to know if he could go directly through
5    PASSAPERA or if he needed to go through Martinez Fontes. PASSAPERA replied that
6    Person B could go directly through him.

7         43.    On or about September 16, 2019, Quintero-Gonzalez messaged
8    PASSAPERA that he had a "muchacho" ready and also had the "deposit." PASSAPERA
9    asked Quintero-Gonzalez to call him.

10        44.    On or about September 17, 2019, PASSAPERA messaged Quintero-
11   Gonzalez to be ready at the "location" at "10am." Quintero-Gonzalez responded that they
12   would be ready.

13        45.    On or about September 17, 2019, PASSAPERA messaged Person B asking
14   what happened. Person B responded that he had talked with the "muchacho" and he
15   thought the "muchacho" would be arriving before the 23rd.

16        46.    On or about September 18, 2019, Quintero-Gonzalez messaged
17   PASSAPERA that he had a "muchacho" ready and also had the "deposit." PASSAPERA
18   asked Quintero-Gonzalez to call him.

19        47.    On or about September 18, 2019, Martinez Fontes messaged PASSAPERA
20   that he had several people waiting.

21        48.    On or about September 19, 2019, Quintero-Gonzalez asked PASSAPERA
22   when he wanted to come by for the "deposit." PASSAPERA asked Quintero-Gonzalez if
23   PASSAPERA could come by that same day. Quintero-Gonzalez said PASSAPERA could
24   stop by the next day for the "deposit."

25        49.    On or about September 19, 2019, Person B messaged PASSAPERA that "the
26   person" said they would wait until PASSAPERA returned. PASSAPERA responded
27   saying it was not a problem.

28

50.   On or about September 20, 2019, Quintero-Gonzalez messaged PASSAPERA to go to Quintero-Gonzalez's brother's house to get the "money." PASSAPERA replied asking for Quintero-Gonzalez's brother's address.

51.   On or about September 20, 2019, Martinez Fontes messaged PASSAPERA that he had another one in addition to the one for Tuesday, and he wanted to know what would be quickest, Sunday or Monday. PASSAPERA replied that he would call Martinez Fontes shortly.

52.   On or about September 22, 2019, PASSAPERA messaged Martinez Fontes asking if it was possible to move "the muchacho" on Monday. Martinez Fontes responded that the only problem would be getting the money, because they planned to go to the bank to get the money on Monday. PASSAPERA and Martinez Fontes exchanged messages about picking the person up on Tuesday at 10:30 at "km 23."

53.   On or about September 22, 2019, PASSAPERA messaged Quintero-Gonzalez that he was on his way to work and that he would call Quintero-Gonzalez when he was heading for the border. Quintero-Gonzalez replied that the "muchacho" was already in Sonoyta and was "ready." PASSAPERA asked if the "other muchacho" was coming "tomorrow." Quintero-Gonzalez replied that the "muchacho" had not deposited the "money" yet so they might have to cancel.

54.   On or about September 24, 2019, PASSAPERA messaged Martinez Fontes that he was on his way to work. Martinez Fontes messaged PASSAPERA that the "muchacho" was already there, that his name was "Pancho," and that he was wearing a brown and grey shirt, and blue pants. PASSAPERA replied that he was on his way to the border and said for the person to be ready at 10:30 AM.

55.   On or about October 16, 2019, PASSAPERA messaged Person B asking if the "muchachos" were still motivated. Person B responded that he had two ready. PASSAPERA asked if they were already at the pickup area.

56.   On or about October 17, 2019, PASSAPERA messaged Person B asking what happened with the "muchacho." Person B responded that the person's wife was

1    supposed to bring him the "deposit" but had not arrived.   Person B later messaged
2    PASSAPERA that he had the "money" in hand.

3        57.    On or about October 17, 2019, PASSAPERA messaged Quintero-Gonzalez
4    indicating he could smuggle additional individuals on "Friday" the 25th.   Quintero-
5    Gonzalez replied that he had "three muchachos." PASSAPERA responded that he could
6    do one for "Friday" and would let Quintero-Gonzalez know when he could do the "other
7    two."

8        58.    On or about October 21, 2019, PASSAPERA and Martinez Fontes
9    exchanged messages about smuggling additional people.   Martinez Fontes messaged
10   PASSAPERA that he could bring PASSAPERA "the 8," and said he had the "ticket" ready
11   for PASSAPERA to pick up.

12       59.    On or about October 22, 2019, PASSAPERA messaged Martinez Fontes that
13   they would be ready for "the 2." Martinez Fontes messaged PASSAPERA that the one for
14   that day was named "Eduardo," and that he was wearing a black shirt and blue pants.
15   Martinez Fontes stated that the one for the next day was 90 percent sure but was still in
16   Mexicali. Martinez Fontes messaged PASSAPERA that they were arriving in 20 minutes
17   to "km 23." PASSAPERA replied, "Ok." PASSAPERA later messaged Martinez Fontes
18   that he hoped he was not paid in "fives" because it created too much bulk. Martinez Fontes
19   messaged PASSAPERA that he was ready with the "ticket."

20       60.    On or about October 22, 2019, PASSAPERA messaged Quintero-Gonzalez
21   asking if PASSAPERA could pick up the "tickets" today.   Quintero-Gonzalez sent
22   PASSAPERA an address in Phoenix, Arizona, and PASSAPERA said he would arrive
23   around 11:30.

24       61.    On or about October 23, 2019, Martinez Fontes messaged PASSAPERA that
25   he had "one for Friday" and "another for Thursday." PASSAPERA replied, "Ok."
26   Martinez Fontes stated that the one for "Thursday" was going to give him the "ticket" on
27   Sunday and was "95%."

28

62.     On or about October 24, 2019, Martinez Fontes messaged PASSAPERA that Martinez Fontes was ready with the "ticket" and the "muchacho" was "27 years old." PASSAPERA replied that he should be ready at 10:00 AM.

63.     On or about October 25, 2019, Martinez Fontes messaged PASSAPERA that Martinez Fontes had already explained everything to the "muchacho" who would be wearing a black sweater and grey pants. PASSAPERA said to have him at the location at 10. Martinez Fontes said he instructed the muchacho to make sure the area was clear of other vehicles. Martinez Fontes later messaged PASSAPERA that the "ticket" was ready, and they were of the kind PASSAPERA liked.

64.     On or about October 26, 2019, Person B messaged PASSAPERA that he had "one person" "ready" and asked about how to get PASSAPERA the "deposit." PASSAPERA responded that he would get in touch with Person B shortly.

65.     On or about October 29, 2019, PASSAPERA messaged Quintero-Gonzalez asking if the person for Friday was still coming. Quintero-Gonzalez confirmed that the person was ready. PASSAPERA asked when he could stop by for the "ticket."

66.     On or about October 29, 2019, Person B messaged PASSAPERA asking if PASSAPERA still had Friday available. PASSAPERA responded he had Thursday available. Person B replied he had "another person" but wanted to check with PASSAPERA first. Person B later messaged PASSAPERA confirming another person for "Saturday 9" and they could arrange to give PASSAPERA the "deposit." PASSAPERA reminded Person B that the "deposit" needed to be ready at least two days prior.

67.     On or about October 31, 2019, PASSAPERA messaged Quintero-Gonzalez to ensure the person had "dark clothing." Quintero-Gonzalez replied that the "muchacho" was already there, and PASSAPERA confirmed he was on his way.

68.     On or about November 1, 2019, Quintero-Gonzalez messaged PASSAPERA that there were two more "muchachos" ready. PASSAPERA indicated he needed to check his schedule.

69.     On or about November 6, 2019, PASSAPERA messaged Quintero-Gonzalez saying there was a problem and they only gave him "7," and he was missing a "thousand." Quintero-Gonzalez said he would check with this brother, and later messaged PASSAPERA that Quintero-Gonzalez's brother had messed up and apologized to PASSAPERA.  Quintero-Gonzalez said he had another "muchacho" ready and asked if Sunday was still open.  PASSAPERA responded that Sunday was available.

70.     On or about November 9, 2019, PASSAPERA messaged Person B saying he was on his way and would call soon.  Person B asked if the person needed to be at the spot at 9:30.  PASSAPERA said yes and asked if the person was there.  Person B said the person was at "kilometro 19."  Person B advised PASSAPERA that the person was not seeing anything, and told the person to text him if he saw something.  Person B later messaged PASSAPERA that "Diego" just saw a truck heading toward "San Luis."  PASSAPERA asked "migra?" and Person B responded, "yes." PASSAPERA asked Person B to tell him when the truck returned.

71.     On or about November 12, 2019, PASSAPERA messaged Martinez Fontes that PASSAPERA believed he would have space on the 19th for the muchacho who already "gave the deposit."  Martinez Fontes told PASSAPERA to stop by when he wanted for the "ticket."  PASSAPERA said he would try to stop by that day.

72.     On or about November 12, 2019, Person B messaged PASSAPERA that the person was already there and Person B instructed the person to call him if a truck passed by.  PASSAPERA responded, "Ok."  Person B later messaged PASSAPERA that a white Ram truck passed heading toward "San Luis," but the "muchacho" said it did not have Border Patrol markings.   PASSAPERA replied, "Ok."   Person B later messaged PASSAPERA asking if PASSAPERA could meet Person B at Food City saying he already had "the money."

73.     On or about November 19, 2019, PASSAPERA messaged Martinez Fontes that he was on his way.  Martinez Fontes replied that everything was clean and believed it was raining.  Martinez Fontes said he had the "ticket."

74.   On or about November 19, 2019, PASSAPERA messaged Quintero-Gonzalez asking if the one for "tomorrow" was ready. Quintero-Gonzalez replied that the "muchacho" was already at "the point."

75.   On or about November 19, 2019, Person B messaged PASSAPERA saying he had a woman who wanted to purchase passage for herself and her nine-year old son. PASSAPERA said he would call Person B later.

76.   On or about November 20, 2019, PASSAPERA messaged Person B asking when "the woman with the boy" would be ready. Person B said in one or two weeks. PASSAPERA asked about the wife of "rojo." Person B said he had four people ready in addition to Rojo's wife, for a total of five people. PASSAPERA said he might have room on Saturday. Person B later messaged PASSAPERA that he was receiving the "deposit" "tomorrow" and asked PASSAPERA to tell him when and where to meet so Person B could give PASSAPERA the "ticket."

77.   On or about November 24, 2019, Martinez Fontes messaged PASSAPERA that the "muchacho" was wearing blue pants, a black sweater, and was named "Lupe." PASSAPERA replied, "Ok."

78.   On or about November 25, 2019, Martinez Fontes messaged PASSAPERA that he already had the "ticket" for one, and the next day Martinez Fontes would receive the other, and PASSAPERA could stop by for the "ticket." Martinez Fontes later messaged PASSAPERA that he had "2 tickets" for whenever PASSAPERA wanted to come by. PASSAPERA replied he would come by at 10:30.

79.   On or about November 26, 2019, PASSAPERA directed Person B to advise PASSAPERA when Person B had the "ticket" from Sunday.

80.   On or about November 30, 2019, Person B messaged PASSAPERA that he had the "ticket" from Sunday to give to PASSAPERA.

81.   On or about December 2, 2019, Martinez Fontes messaged PASSAPERA that an individual named "Pedro," who was wearing a black jacket and blue pants, was ready and everything looked good. Martinez Fontes stated he would arrange with Pedro's

1  wife to bring the "ticket." Later that day, PASSAPERA messaged Martinez Fontes asking

2  if the "other" would be ready the following day. Martinez Fontes replied that "Marco" was

3  ready for the following day.

4      82.    On or about December 4, 2019, PASSAPERA messaged Person B asking if

5  everything was ready "for tomorrow" and instructing for the person to be there "at 930."

6  Person B responded he would have the person there at 9:30.

7      83.    On or about December 5, 2019, Person B messaged PASSAPERA that the

8  "muchacho" said a Silverado construction truck passed by heading for "San Luis," and a

9  helicopter also passed by heading toward "[S]onoyta." PASSAPERA responded, "Ok."

10     84.    On or about December 6, 2019, PASSAPERA messaged Person B that he

11  was missing "2" thousand of the money from "Orlando." Person B said he had the rest of

12  the money and could give it to PASSAPERA that day or Sunday.

13     85.    On or about December 10, 2019, Martinez Fontes messaged PASSAPERA

14  that "Marcos" would be ready, was wearing a black sweater and blue pants, and everything

15  looked good. PASSAPERA replied, "Ok."

16     86.    On or about December 16, 2019, Person A messaged PASSAPERA

17  identifying himself as Quintero-Gonzalez's brother, the one who had delivered "papers" to

18  PASSAPERA, and that the "muchacho" for Tuesday was "ready."

19     87.    On or about December 26, 2019, Person B messaged PASSAPERA that he

20  had confirmed with the "muchacho" and nothing had passed by. Shortly after, Person B

21  added that a construction truck on the Mexican side had stopped close to the "muchacho."

22  PASSAPERA responded "Ok," and asked if the truck had left. Person B said yes, and that

23  the "muchacho" had seen PASSAPERA. PASSAPERA said he also saw the "muchacho."

24  Several hours later, Person B messaged PASSAPERA apologizing for only being able to

25  get "$10,400," explaining he was not able to get more from the bank.

26     88.    On or about January 2, 2020, Person A messaged PASSAPERA that one

27  would be there at "9:30." PASSAPERA responded, "Yes 930." Person A replied that they

28  would deliver the "deposit" "tomorrow."

89.     On or about January 2, 2020, Martinez Fontes messaged PASSAPERA that one weighed "85 kilos" and was "172" centimeters tall, and the other weighed "95 kilos" and was "173" centimeters tall.   PASSAPERA replied asking about the "deposit." Martinez Fontes told PASSAPERA to stop by when he wanted, and it would be "7" in "twenties" and "one" of the other kind.  PASSAPERA replied, "Ok."

90.     On or about January 3, 2020, Person A messaged PASSAPERA that he had "two deposits."  PASSAPERA replied, "Ok."

91.     On or about January 3, 2020, Martinez Fontes messaged PASSAPERA that he had the "ticket" with him and would wait to hear from PASSAPERA.  PASSAPERA replied that they would do it "tomorrow."

92.     On or about January 4, 2020, Person B messaged PASSAPERA that he had the "deposit" from two people and PASSAPERA could pick it up "today or tomorrow." PASSAPERA replied, "tomorrow."

93.     On or about January 6, 2020, PASSAPERA messaged Martinez Fontes, "one tomorrow," and directed that the person be there "at 930."

94.     On or about January 7, 2020, Martinez Fontes messaged PASSAPERA that the "muchachos" had just arrived and the first one was named, "Cesar."  PASSAPERA replied, "Ok."

95.     On or about January 7, 2020, PASSAPERA messaged Person B asking if everything was ready for tomorrow.   Person B confirmed everything was "ready." PASSAPERA reminded Person B to have the person wear "dark clothing" and be there at "9:30."

96.     On or about January 21, 2020, Person C messaged PASSAPERA that he had another "chava" who wanted to come and that he was in communication with the "muchachos."  PASSAPERA asked for an address and Person C provided an address in the Phoenix area.  PASSAPERA also asked Person C to provide the rest of the "ticket" in larger denominations to avoid too much bulk.  Person C asked how much PASSAPERA received, and PASSAPERA replied, "8 each one."

97. On or about January 22, 2020, Person C messaged PASSAPERA asking when PASSAPERA would arrive so he could have the "money" ready. PASSAPERA responded he would arrive around 6:00 or 6:30 and told Person C to have it "ready" then.

98. On or about January 27, 2020, Person A messaged PASSAPERA that there were "tickets" for whenever PASSAPERA wanted to come by. PASSAPERA asked Person A to call him.

99. On or about January 28, 2020, PASSAPERA messaged Person A asking how many he had ready. Person A responded, "2."

100. On or about February 6, 2020, PASSAPERA messaged Person A instructing Person A to have one of the people ready for "Monday," and the "other" for "Thursday."

101. On or about February 8, 2020, Person B messaged PASSAPERA that a yellow truck had passed heading toward "San Luis." PASSAPERA responded, "Ok." Several hours later, Person B asked PASSAPERA if everything was okay, and PASSAPERA responded that they were on their way.

102. On or about February 10, 2020, Person A messaged PASSAPERA that a "troop" was near "San Luis." PASSAPERA asked if they were from "immigration." Person A replied that they were from "construction." Person A provided descriptions of various construction trucks in the area.

103. On or about April 22, 2020, Person A messaged PASSAPERA asking when he would be available to do "one." PASSAPERA replied that everything was booked, and he would let Person A know.

104. On or about May 18, 2020, Person D's wife messaged PASSAPERA asking PASSAPERA to send her the location where Person D would be picked up by PASSAPERA. PASSAPERA sent Person D's wife photographs and a message stating, "Km23." Person D's wife and PASSAPERA discussed payment to PASSAPERA in the form of gold jewelry.

105. On or about May 20, 2020, Person D's wife messaged PASSAPERA that she was with Person D and Person D was "ready." PASSAPERA responded he was on his

1   way. PASSAPERA later messaged Person D telling him to cross the border into the United

2   States and hide until PASSAPERA arrived.

3                    Bribes Related to Smuggling Controlled Substances

4        106.    On or about January 8, 2020, Person E messaged PASSAPERA to apologize

5   for the "7" that were missing.

6        107.    On or about January 9, 2020, Person E messaged PASSAPERA that his

7   "lady" was going to deliver the "paper" to PASSAPERA, and she could be trusted.

8   PASSAPERA responded, "Ok."  Person E asked PASSAPERA to let him know when

9   another date became available, and PASSAPERA said he would.

10       108.    On or about January 18, 2020, Person E messaged PASSAPERA asking what

11  day PASSAPERA would be able to do it saying he was anxious for an appointment.

12  PASSAPERA asked Person E to call him.  Person E later messaged PASSAPERA asking

13  what time, and PASSAPERA responded "930" or "10."

14       109.    On or about January 19, 2020, PASSAPERA messaged Person E asking if

15  everything was "ready."  Person E confirmed and asked PASSAPERA for an exact time.

16  PASSAPERA said Person E needed to be there "before 10."  Person E said he would be

17  there at "940."  Later that day, PASSAPERA and Person E exchanged messages about

18  PASSAPERA meeting up with his "lady" at a carwash in Avondale, Arizona ("Avondale

19  Car Wash").  Person E messaged PASSAPERA about setting up another "appointment."

20       110.    On or about February 13, 2020, Person E messaged PASSAPERA that an

21  "immigration" truck passed by heading toward kilometer 25.  PASSAPERA responded,

22  "Ok."  Later, PASSAPERA messaged Person E that he was there, but Person E's people

23  were not.

24       111.    On or about February 26, 2020, Person E messaged PASSAPERA that it

25  "looked clean" but a pickup truck for "immigration" was heading toward "San Luis."

26  PASSAPERA responded, "It's me."  Person E added that kilometer 24 was "clean" but

27  kilometer 26 had "workers," while kilometer 20 had a "yellow truck" heading toward "San

28  Luis."  PASSAPERA told Person E he would call Person E.

112.   On or about March 13, 2020, Person A messaged PASSAPERA that they were on their way.  PASSAPERA responded, "Ok."  Person A messaged PASSAPERA that a white truck passed heading toward San Luis, but it appeared to be a "work" truck. PASSAPERA responded, "Ok."

113.   On or about March 15, 2020, PASSAPERA messaged Person E that he was taking care of things for the week and would call Person E later.  Person E replied, "Ok." PASSAPERA said "one" for Tuesday and "another" for Wednesday.

114.   On or about March 18, 2020, Person E messaged PASSAPERA that there was a pickup truck at kilometer 27 heading toward San Luis.  PASSAPERA asked, "Migra?"  Person E responded, "yes."  Later that day, PASSAPERA messaged Person E that Person E would be charged "40" for "this one."

115.   On or about April 2, 2020, Person E messaged PASSAPERA asking where he could send a photograph of the "bag" so PASSAPERA knew how big it was.  Person E followed up by asking how everything was going.  PASSAPERA responded, "at 930." Person E messaged PASSAPERA that a pickup truck passed by, but it was not "migras." PASSAPERA disclosed he was at "Km 18."  Person E and PASSAPERA exchanged additional messages about vehicle traffic along the international border.

116.   On or about April 5, 2020, Person E messaged PASSAPERA asking what kilometer PASSAPERA was passing so Person E could check the area.  PASSAPERA responded, "17."  Person E informed PASSAPERA that "18" heading toward "San Luis" was "clean."

117.   On or about April 17, 2020, PASSAPERA messaged Person E that he would see him "tomorrow at 915."

118.   On or about April 18, 2020, Person E messaged PASSAPERA that everything was "clean," and asked PASSAPERA for his whereabouts.  PASSAPERA responded he would be there in about 15 minutes.  Person E later messaged PASSAPERA about vehicle traffic activity near the "25."

119.   On or about April 19, 2020, PASSAPERA messaged Person E that they were set for Wednesday at the same time, "915."

120.   On or about April 22, 2020, PASSAPERA messaged Person E asking if it was "clean." Person E responded that a "Tahoe" from the "migra" was at the "25." PASSAPERA provided updates on his location, telling Person E he was at "km 15" and later at "Km 20." Later that day, PASSAPERA messaged Person E to have "the lady" meet him at the same location tomorrow at 9AM.

121.   On or about April 26, 2020, Person E messaged PASSAPERA that it looked "clean." PASSAPERA responded, "Ok," and told Person E he was at "km 18."

122.   On or about April 27, 2020, PASSAPERA messaged Person E asking if his wife was on the way. Person E responded that she was about 5 minutes away.

123.   On or about May 3, 2020, Person E messaged PASSAPERA that it was "clean." PASSAPERA responded, "Ok." PASSAPERA provided updates on his location, telling Person E he was at "10," then "15," then "19." PASSAPERA later messaged Person E that he was going to charge him "5" for each of the "gray ones" for a total of "60." PASSAPERA told Person E to tell "the lady" that the delivery would be at a different location tomorrow morning.

124.   On or about May 3, 2020, Person F messaged PASSAPERA on behalf of "Ivan" asking where Person F was supposed to meet PASSAPERA for the "bags."

125.   On or about May 4, 2020, PASSAPERA met with Person F at the Avondale Car Wash and delivered two bags of luggage. Later that day, Person E messaged PASSAPERA saying that the "green" bag had things missing. PASSAPERA messaged Person F saying that, according to "Ivan," the "green" bag was missing something, and that he did not open or take anything out of the bag. Person F responded that it was missing "30 pieces." PASSAPERA said that if one of his people did something like that, they would have their hands cut off.

126.   On or about May 13, 2020, PASSAPERA messaged Person E asking Person E to tell PASSAPERA when he arrived. Person E asked what time he should be there, and

PASSAPERA said at "915" "like always." PASSAPERA messaged Person E, "Km16," and Person E responded it was "clean." Later that day, Person E asked PASSAPERA to let him know if PASSAPERA was going make the delivery that day so they were ready. PASSAPERA responded that it would be the next day, and instructed Person E to tell "the lady" to send PASSAPERA a message to coordinate the location. Person F then messaged PASSAPERA saying that "ivan" told her to text PASSAPERA about the pickup. PASSAPERA relayed to Person E that PASSAPERA had spoken to "her," and would be seeing her the next day around 11 AM.

127.    On or about May 14, 2020, PASSAPERA drove to the Phoenix Sky Harbor International Airport and entered the Terminal 4 parking garage shortly after 11 AM, where he parked next to a black vehicle occupied by two females.

128.    On or about August 9, 2020, PASSAPERA met with Person F at the Phoenix Sky Harbor International Airport and delivered two duffle bags containing various controlled substances. PASSAPERA received $39,980 in cash from Person F.

### III.  Execution of the Bribery Scheme

129.    On or about each of the dates set forth below, in the District of Arizona and elsewhere, CARLOS VICTOR PASSAPERA PINOTT, for the purpose of executing the bribery scheme, knowingly transmitted and caused to be transmitted by means of wire and radio communications in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| 1 | 03/18/2020 | PASSAPERA text message to Person E that Person E would be charged "40" for "this one" |
| 2 | 05/03/2020 | PASSAPERA text message to Person E that he was going to charge "5" for each of the "gray ones" for a total of "60" |
| 3 | 05/20/2020 | PASSAPERA text message to Person D telling him to cross into the United States and hide until PASSAPERA arrived |

1    All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNT 4
### 18 U.S.C. § 201(b)(2)
### (Bribery of Public Official)

130.    Paragraphs 1 through 128 of this Superseding Indictment are realleged and incorporated by reference for this count.

131.    On or about August 9, 2020, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally; that is, $39,980 in U.S. currency, in return for being induced to do and omit to do an act in violation of his official duties; that is, to not interdict two duffel bags he knew to contain controlled substances that were illegally imported into the United States from the Republic of Mexico, contrary to his official duties as a U.S. Border Patrol Agent, in violation of Title 18, United States Code, Section 201(b)(2)(C).

## COUNT 5
### 18 U.S.C. § 201(b)(2)
### (Bribery of Public Official)

132.    Paragraphs 1 through 128 of this Superseding Indictment are realleged and incorporated by reference for this count.

133.    On or about December 26, 2019, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally; that is, $10,400 in U.S. currency, in return for being induced to do and omit to do an act in violation of his official duties; that is, to not interdict an alien he knew to have entered the United States illegally, contrary to his official duties as a U.S. Border Patrol Agent, in violation of Title 18, United States Code, Section 201(b)(2)(C).

## COUNT 6
### 21 U.S.C. § 846
**(Conspiracy to Possess with Intent to Distribute Cocaine, Fentanyl, and Heroin)**

134.    Paragraphs 1 through 26 and 106 through 128 of this Superseding Indictment are realleged and incorporated by reference for this count.

135.    Beginning at a time unknown, but no later than in or around January 2020, to August 9, 2020, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT did knowingly and intentionally combine, conspire, confederate and agree with persons known and unknown to the grand jury, including Person E and Person F, to possess with intent to distribute 5 kilograms or more of cocaine, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii)(II); 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi); and 1 kilogram or more of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i).

All in violation of Title 21, United States Code, Section 846.

## COUNT 7
### 21 U.S.C. § 841(a)(1)
**(Possession with Intent to Distribute Cocaine)**

136.    Paragraphs 1 through 26 and 106 through 128 of this Superseding Indictment are realleged and incorporated by reference for this count.

137.    On or about August 9, 2020, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT, did knowingly and intentionally possess with intent to distribute 5 kilograms or more of cocaine, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii)(II).

## COUNT 8
### 21 U.S.C. § 841(a)(1)
### (Possession with Intent to Distribute Fentanyl)

138.    Paragraphs 1 through 26 and 106 through 128 of this Superseding Indictment are realleged and incorporated by reference for this count.

139.    On or about August 9, 2020, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT did knowingly and intentionally possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

## COUNT 9
### 21 U.S.C. § 841(a)(1)
### (Possession with Intent to Distribute Heroin)

140.    Paragraphs 1 through 26 and 106 through 128 of this Superseding Indictment are realleged and incorporated by reference for this count.

141.    On or about August 9, 2020, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT did knowingly and intentionally possess with intent to distribute 1 kilogram or more of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i).

## COUNT 10
### 18 U.S.C. § 924(c)(1)(A)
### (Using and Carrying a Firearm During and In Relation to Drug Trafficking)

142.    Paragraphs 1 through 26, 106 through 128, and 134 through 135 of this Superseding Indictment are realleged and incorporated by reference for this count.

143.    Beginning at a time unknown, but no later than in or around January 2020, to August 9, 2020, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT did knowingly use and carry a firearm, that is, a Heckler & Koch P2000, serial number 123-009704, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, Conspiracy to Possess with Intent to

Distribute Cocaine, Fentanyl, and Heroin, as alleged in Count 6 of the Superseding Indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

**COUNT 11**
**8 U.S.C. § 1324**
**(Conspiracy to Transport Illegal Aliens for Profit)**

144.   Paragraphs 1 through 105 of this Superseding Indictment are realleged and incorporated by reference for this count.

145.   Beginning at a time unknown, to on or about August 9, 2020, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT, did knowingly and intentionally combine, conspire, confederate, and agree with persons known and unknown to the grand jury, to transport and move illegal aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law for the purpose of commercial advantage or private financial gain, all in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i).

**COUNT 12**
**8 U.S.C. § 1324**
**(Bringing In of Illegal Alien for Profit)**

146.   Paragraphs 1 through 105 of this Superseding Indictment are realleged and incorporated by reference for this count.

147.   On or about May 20, 2020, in the District of Arizona, CARLOS VICTOR PASSAPERA PINOTT, knowing and in reckless disregard of the fact that a certain alien, Person D, had not received prior official authorization to come to, enter, and reside in the United States, did knowingly and intentionally aid and abet said alien being brought to the United States in any manner whatsoever, regardless of any official action which may later be taken with respect to said alien, and did so for the purpose of commercial advantage and private financial gain and with the intent to violate the United States immigration laws, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii), and Title 18, United States Code, Section 2.

## COUNT 13
### 18 U.S.C. § 1957
### (Money laundering)

148.   Paragraphs 1 through 128 of this Superseding Indictment are realleged and incorporated by reference for this count.

149.   On or about May 30, 2020, in the District of Arizona and elsewhere, CARLOS VICTOR PASSAPERA PINOTT, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, a deposit, transfer, and exchange of funds and monetary instruments to purchase $26,200 in cashier's checks as payment for a 2016 Mercedes-Benz GLC 300, such property having been derived from a specified unlawful activity, that is, bribery of a public official in violation of 18 U.S.C. § 201(b)(2).

In violation of Title 18, United States Codes, Sections 1957 and 2.

## COUNT 14
### 18 U.S.C. § 1957
### (Money laundering)

150.   Paragraphs 1 through 128 of this Superseding Indictment are realleged and incorporated by reference for this count.

151.   On or about December 30, 2019, and January 24, 2020, in the District of Arizona and elsewhere, CARLOS VICTOR PASSAPERA PINOTT, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, a deposit, transfer, and exchange of funds and monetary instruments to purchase real estate in Lakeside, Arizona for $18,900, such property having been derived from a specified unlawful activity, that is, bribery of a public official in violation of 18 U.S.C. § 201(b)(2).

In violation of Title 18, United States Codes, Sections 1957 and 2.

**FORFEITURE ALLEGATION**

Upon conviction of Counts One through Five of this Superseding Indictment, the defendant, CARLOS VICTOR PASSAPERA PINOTT, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

Upon conviction of Counts Six through Nine of this Superseding Indictment, the defendant, CARLOS VICTOR PASSAPERA PINOTT, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, all right, title, and interest in (1) any property, real or personal, constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of the said violations, and (2) any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate, the commission of the said violations.

Upon conviction of Counts Eleven and Twelve of this Superseding Indictment, the defendant, CARLOS VICTOR PASSAPERA PINOTT, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(6), (a) any conveyance, including any vessel, vehicle, or aircraft, used in the commission of the offense; (b) any property, real or personal, that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; and (c) any property, real or personal, used to facilitate or intended to be used to facilitate the commission of the offenses.

Upon conviction of Counts Thirteen and Fourteen of this Superseding Indictment, the defendant, CARLOS VICTOR PASSAPERA PINOTT, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the offense, or any property traceable to such property.

The property to be forfeited includes, but is not limited to:

1.      The real property known as and located at 6994 Leo Lane, Lakeside, Arizona with Navajo County Assessor's parcel number 212-71-024; and

2.    One 2016 Mercedes-Benz GLC300, VIN WDC0G4KB4GF019623; and

3.    A sum of money equal to the amount of proceeds obtained as a result of the offenses, that is, $1,096,000.

If any of the forfeitable property, as a result of any act or omission of the defendant: (1) cannot be located upon the exercise of due diligence; (2) has been transferred or sold to, or deposited with, a third party; (3) has been placed beyond the jurisdiction of the court; (4) has been substantially diminished in value; or (5) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property, including but not limited to all property, both real and personal, owned by the defendant.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 982(a)(6); Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

*/ s /*

FOREPERSON OF THE GRAND JURY
Date:   September 29, 2021

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*/ s /*

RYAN J. ELLERSICK
GORDON E. DAVENPORT III
Assistant U.S. Attorney

**REDACTED FOR
PUBLIC DISCLOSURE**

*United States of America v. Carlos Victor Passapera Pinott*
*Superseding Indictment Page 27 of 27*